Archie v. Nagle & Zaller, 18-1979. Oh my god, not my day. Go ahead. Oh, yes, I didn't see you there, you're so cute. May it please the court, my name is Phillip Robinson on behalf of Ms. Archie and Dr. Sharma. I'd like to first address what I think the court is most likely interested in based on what's published on the court's website. The question on the court's website about this case is whether or not a de minimis overstatement of amount of a debt is actionable under the Fair Debt Collection Practices Act. Actually, the court doesn't do those. The clerk does it for the benefit of audiences. So you can certainly start with that and that certainly will probably be of interest. In the future, I don't know that I would take that as a hallmark. I'm just assuming the court is interested and maybe I assumed it correctly, but about the materiality, de minimis arguments back and forth between the parties. I'll just address those first is my plan. There is one housekeeping thing that I didn't plan to get into substantively that I also want to address up front. In reviewing cases and preparing for argument, the Supreme Court took certiorari on a sub-issue that's in the briefing back and forth about whether the discovery rule applies under the FDCPA. An argument is scheduled on that in October. I'm only raising that now because I'm not intending to spend much time on that. If the court didn't know, I don't want to alert you because I think… It only applies to one of the two claims anyway, right? Correct. Isn't that right? I think it's briefed up and teed up and I'm not going to spend time on argument and the folks higher up are going to deal with that issue most likely. So, the answer I think from our briefing and we did in candor to the court I think a much better job in the reply brief than we did in the opening brief. But in both briefs, we admit and concede that the case law that has developed is that materiality or whether it's a minimis violation by a debt collector is an issue relevant to some fair debt collection practices at claims. And what's in this case and where most of the cases come down that have addressed this are claims. In this case, it's claims under 1692E and claims under 1692F. The case law seems to say candidly to the court that there needs to be a material violation for some claims under 1692E. I don't think the case law says and I haven't been able to find it that there needs to be a materiality finding about violations under 1692F. And the reason for that I think is pretty distinctive and the disjunction I think for how other courts and this court has looked at it from different cases is just looking at the plain text at the beginning of both provisions. 1692E applies to false, deceptive, misleading representations or means in collection. And 1692F applies to unfair or unconscionable means to collect or attempts to collect. And so our argument and what we think this case is about is about the means used in collection by Nagel and Zahler on two specific aspects. And it is true that the means used also included representations, but we don't think under the facts of the case. I'm going to do the case law a little bit to sort of set out what I think is pretty clear about the materiality of the de minimis argument. But this case is really from our point of view about the means of collection, the tools and methods used by Nagel and Zahler that are issued in the case. It's not a dispute about the amounts. Now, my colleague on the other side has done a very good job of teeing up the issue as to the cost claimed on a writ of garnishment as a representation claim. But that's not really how we approached it and we don't think it applies. So to sum up some of the case law that's in the briefing, materiality, if it is required, the case law and the Damaris case and the Eighth Circuit says it doesn't apply to debts not owed. So here we have debts not owed. We have costs that were imposed and sought in a writ of garnishment that aren't owed as a matter of law. So we don't really think materiality applies to that claim. The mathematical calculation that the District Court did at the invitation of Nagel and Zahler, and I understand why they're making that argument, was Ms. Archie owed a large sum of money in the amount of costs that we're complaining about that we say aren't authorized under state law. When you do that mathematical calculation, it's a very small percent. And so that's a very inviting sort of thing to look at. So, I mean, whether you think of it as a misrepresentation claim or a means claim, is there any court holding that a minor misrepresentation as to the amount of money owed is in fact de minimis and therefore not material? I mean, that seems, do we have, that's my only question. I couldn't find a case saying that an over-representation of the amount due counts as non-material. We sort of say in Powell, maybe it would, maybe it wouldn't, but we don't get into it there. I mean, I couldn't find, as you say, the Eighth Circuit said it can't, that an over-representation of the amount you owe is always material. Are there any cases coming, any circuit court cases coming out the other way? Well, I think it's a great question, Your Honor, because I went through all of them, including the ones we didn't brief, just to see if there was anything new. So, Damaris, we think that's an F claim. So we don't think any of the courts have really found materiality or de minimis arguments apply to F, the means or method used. Okay, that's not what I was asking, but that's fine. Let's just move on. That's not what you were asking. Nope, but that's okay. And the Coyne case we cite, too, that was a follow-up from the Eighth Circuit, that looks at the false representation of the amount of the debt that overstates what is owed under state law. Material violates 1692E2A. So they found that materiality wouldn't apply because their state law barred the claim. It's the same issue that we have here. We're arguing here state law prohibits them from inflating the cost, as they did on the request for the right of garnishment. The Powell case… Well, you say inflated the cost by paying the fees that the court requires to take the steps to try to collect the debts that your clients didn't pay? That's inflating the cost? Well, to back up, Your Honor, I understand the premise of the court's question. So to back up and let me explain how our view of the law as to the cost. The cost that are permitted by a judgment creditor by statute, and we cite the commercial law article, says are the costs assessed in the cause. And our argument is in the rules cite that they're allowed to… And there's no dispute about this. In the cause, the underlying judgment against Ms. Archie was for $83 in costs. The writ, and they've provided the right of garnishment in their response, and it's in the extract. I have JA-110. That form, and I think this goes to Your Honor's question. That's, I think, the form used with Ms. Archie Leonard, a blank one. But that form says you may add $10 to the request. And so our position is that at best, they were able to add $10 to the $83 if the court accepts that the law permits them to do so. But we don't actually think, and we argue below, that they're actually able to do that. And they have a bunch of, in their response brief here, good faith reliance. We relied on the court rules. They say that we can do this. Court forms. But actually, the law says they're entitled to the cost imposed in the action and then assessed by the court. And so there is no functionality to the difference from what they were seeking, the $85, which was awarded in the cost, and then their writ. They were requesting $118, so that's a difference of $35. There's no explanation, no court judgment anywhere. No judge ever increased the judgment amount. So it would follow from your argument, right, that anyone who used one of these court-approved writ forms and filled it out accurately has now violated this federal statute? No, because not everyone using it is a debt collector. I'm sorry. Any debt collector who used the form within the statute of limitations could now be charged with violating the federal statute? A debt collector who saw costs in excess of the cause. Who used the form, filled out the form accurately, but because your view is that the form is inconsistent with Maryland law, all of those debt collectors have now violated the federal statute. On one level, Your Honor, Judge Harris, yes. Okay. The next level is even if they use that form and you rely on the form and they have to rely on the basis of that form. I'm just asking about the implications of your view. The form says they can add $10. Well, and in post-judgment costs, and I think it is a fair implication from that that post-judgment court costs may be included. Right. And the law, though, doesn't permit them to add post-judgment costs without some court adjudication as to what those costs were. The reverse, Judge Harris, to the hypothetical that you're providing is what's to say that the debt collector doesn't add in $100 on the cost? What review or supervision? Well, then I assume you could say that's false if you can't get to $100 based on, you know, I looked at that Maryland schedule of costs. If the number is false, then you wrote down a false number. But you're not alleging that he wrote down a false number here, right? And you would raise, you know, that you'd have a process to challenge that under Maryland Statute 3646A if they were just willy-nilly putting amounts in there. We would have a right under Maryland law to time, if notice was given appropriately to the request for the writ to answer the second question, to move the cost of the writ or modify the writ. Absolutely. But in the question, Your Honor, Judge Harris, you asked, we're not alleging that it was false. We alleged a violation in paragraph 134 of 1692E, which was on behalf of the lien. This is talking about the garnishment issue here. So, threatening or attempting to actually collect costs greater than the costs assessed in the cases. Right. So, I'm just saying you're hypothetical about someone writing down false numbers presents a different case. Right. Well, in this case, all that matters is the facts that are before the court is the form says they could add $10. The form says they can add post-judgment court costs. Well, and it specifically says $10. And the court awarded costs for $83. There's been no adjudication anywhere else that the cost increased. So, our legal position, which I think is briefed up and clear, is that we don't think that they were allowed to do that. The second claim, so I don't have a reigning time here, that we address, and that we don't think materiality applies to the method by which they're filing statements of lien and what they're seeking to collect in those statements of lien. And the statements of lien are permitted under the Maryland Contract Lien Act by certain types of creditors. And here, the debt collector enables valid, prepared statements of lien for its clients who are mostly common ownership communities. And so, a homeowner who lives in a homeowner's association or a condominium association, that's where these typically arise, if they're in breach of their contract, the homeowner's declaration and bylaws, and they haven't paid their assessment, under the Contract Lien Act, they can get a notice that says, we find you to be in breach, and we're threatening, essentially, to file a lien, and you need to make arrangements, or we're going to exercise our right under the Contract Lien Act within 33 days, that's 30 days of notice plus three for mailing, to file a lien in the land records. The practice here is that Nagel and Zeller includes in its statement of lien that it records a future, unknown future sums provision. And we've outlined in our briefing that this is not allowed. Maryland law, Contract Lien Act is based on a contract. They're not allowed to file a lien unless there's a breach and damages. The statute says they have to specifically itemize what those damages are. It does not allow for future damages, and Maryland law does not recognize the claim of anticipatory breach of contract. It allows for future interest, right? That's your position, so some forms of future unquantifiable yet-to-be-determined costs are allowed. Interest. Right. It's specific. It doesn't say damages. I thought it defined damages to include interest. Isn't that what happens? It doesn't matter. Your argument does not apply to the part of this that involves interest. Correct.  We can see that it allows interest, and the reason is because it's very simple to calculate. That statement of lien says what's owed, what the breach is, what the damages are, and it has a date. And the interest can be calculated from that. So that's why the statute, when it comes time for someone to pay and get a release on that lien, you can calculate the future interest that it approved since the filing of the lien. But it didn't say future damages. Nowhere in the statute does it say that. You talked about these being largely condominium associations. And what about the declaration in the Gabriel's condominium document? I think it's the Homeowners Association, the Gabriel-run community. Yeah, yeah, yeah, yeah, which says that it provides for assessment costs, late fees, and reasonable attorney fees shall be continuing lien on the property. Right. It also states that the unit owners are obliged to pay all attorney fees, court costs, administrative costs incurred in connection with the collection of assessment, if not paid when due. Thus the contract seems to provide for continuing costs. So I'm running out of time, and I'd like to answer the Court's question because it's a key one on this issue. And I'll answer the question, and then I'll save the rest of my time for the rebuttal, I guess. But the select portfolio case takes care of this. Yes, the contracts say that. Yes, the contracts are recorded. But under the Contract Lien Act, you do not have a lien in Maryland until the lien is filed. The contract itself does not qualify as a continuing lien, and that argument was raised before the Court of Appeals in the select portfolio case, where a utility made the exact same argument, different context, not a homeowners association or a condominium association, but a claim. They said because our declaration, our records were recorded in the land records, that constitutes a continuing lien, and the Court of Appeals rejected that. So the district court is holding in this case, accepting and finding that Maryland doesn't, that MCLA doesn't expressly permit or prohibit a continuing lien, this cannot be reconciled with the select portfolio case that rejected that exact argument. Well, I don't read the Court of Appeals decision the same way you do. It seems to me that they have the better of the argument on the Court of Appeals decision. I don't think it precludes a lien from encompassing future damages. It merely states that when a declaration is filed, as a practical matter, the declaration has probably not yet been breached. That is true, Your Honor. Without a breach. And without a breach, there were no damages. So that was the holding of the case. It didn't say anything about precluding future damages. The select portfolio case talks about enforceability under the Maryland Contract Lien Act. You have to file a lien. Our argument here is that the future unknown advantages and interest that's there cannot be done so because they don't specify what it is. There's a process under the lien statute that when you get notice you can object to the lien, right? Yes. And you got notice of the lien and you didn't say, hey, I got this undefined future amount and complain about it when you got notice of it. Isn't that correct? The unknown future amount wasn't in the notice, Your Honor. So how is someone supposed to object to what's not in the notice? Well, you have the statement of the lien. Does the notice not describe the lien language? It describes the lien language as to the sums that are claimed to be due from the breach of contract. It does not describe the future unknown sums. And it doesn't provide a copy of the lien that will be recorded 33 days or whatever later. So no homeowner, no consumer, no least sophisticated consumer in this context, in this narrow box that we're looking at, is going to know to object to this language about anticipatory breach of contract claims are going to be looped into the statement of lien that becomes recorded of a matter of record against the property. And the homeowner can't then know what is the exact sum that needs to be paid off. It knows what sum was claimed at the time of the breach. It doesn't know what sums are claimed thereafter because they're not on the statement of lien. And I think they cite to, and the district court talked about, it would be absurd to require for each subsequent breach to have a statement of lien recorded. We know that from the facts. That is the practice here of what Nagel and Zahler did. They filed multiple statements of liens as to Ms. Archie in a short period of time. And that is what the law requires. The legislature is trying to craft a way to not have to adjudicate, litigate, all these claims and set up sort of an alternative method. But there has to be due process. And that due process goes to the questions. You have to get notice of what it is they're claiming. And when they tack on a provision in the statement of lien that's recorded that wasn't in the notice ahead of time and isn't specific and there has been no breach, then that sort of violates the statute But you say, I'm sorry to cut you off, and I know you've got some rebuttal time, but maybe you can address this during that. A lot of the cases that you cite involve where practices are deemed to be improper, involve charges that have not actually been incurred. And you're saying tack on, but that's one way to describe it. I guess another way, it's exactly what your contract documents say, and they are actual damages that have accrued. On a contract claim, they're not damages until there's been a breach. So the statement of lien that's recorded, there has been no breaches to these future unknown songs. And so I don't think they have the right to file that statement of lien. It's 14203C says when the homeowner has the right to object in the real property article, and that's 30 days. They don't have an opportunity after the lien is recorded. So in effect, by this method and means of deflection by Nagel and Zahler, the homeowner is foreclosed, no pun intended, from arguing about the statement of lien once it's recorded that contains a provision not authorized by the statute and doesn't describe any actual damages. And there's a policy judgment for the legislature made to make sure that homeowners have, or not even just homeowners, but individuals subject to these, have a right, would notice an opportunity to object before filing 14203C. But in this case, Ms. Archie and Dr. Sharma didn't have that as severe liens. I'll say whatever time I have left for rebuttal. I probably contributed. No, no, no, not to worry. So we'll hear from Ms. Moffitt. May it please the court. Stacey Moffitt on behalf of defendant and appellee, Nagel and Zahler PC. I'm going to try to address some of the issues and questions that were posed to my colleague and then go back to the substance. With regard to the risk of garnishment cost issue, the presentation before the court this morning was that they're conceding that materiality is, in fact, the standard that this court and many others have adopted with regard to the corollary on the least sophisticated consumer, but now are arguing, and quite frankly this is a new argument, they are arguing that they are not disputing the amount of the debt but the means of collection. And in regard to that, I would like to point, Your Honor, to the second amended complaint filed by the plaintiffs, the operative complaint that Judge Hazel ruled upon, and specifically at JA009. And this is one of the two practices that were exactly at issue and the garnishment issue. And I'm just quoting briefly, specifically, plaintiffs allege, the defendant, quote, has and inflates the amounts claimed and collected as costs in the risk of garnishment that it submits to the state court and serves upon the potential banks and employers of Ms. Archie and the garnishment class. So what we are talking about, very specifically, was the amounts at issue. And they are the amounts awarded, assessed by the district court, by rule. And appellants have continuously ignored Maryland Rule 3-603, which specifically states that costs are to be awarded to the prevailing party. That has been missed entirely. So where appellants continuously argue that nowhere was this $35 awarded as part of the judgment, they are wrong as a matter of law. Maryland Rule specifically answers that question. And it says, unless otherwise provided by rule, law, or order of the court, the prevailing party to an action is entitled to the allowance of costs. It doesn't say pre-judgment costs. It doesn't say post-judgment costs. And the Maryland Rule defines costs to include all of those costs that have been assessed by the clerk or by the sheriff. And as we identified in our brief and in the joint record abstract, the court's schedule of costs identifies both pre-judgment costs, for example, for the filing of the complaint, and post-judgment costs for notice of oral examination or with a garnishment or filing of a lien. Appellants' argument in both the lower court and in their brief before your honors very much relied upon the case law where they argued under the Saddlebrook that in order to have costs, it had to have been by the contract merged into the judgment. Now, number one, we are not talking about costs awarded under a contract. The doctrine of merger does not apply whatsoever. But today, and very begrudgingly in the lower court, appellants finally acknowledge that the form itself states court costs including the $10 for this writ. Now, it doesn't specifically say only the $10. It says including the costs of this writ. You cannot square that interpretation with the case law that appellants are relying on. Because if every court cost had to be awarded by the court and included in the judgment or it was somehow merged, that $10 is completely inconsistent. So you cannot accept the rule or their interpretation of the case law, which, again, doesn't apply because we're not talking about merger. But even under that scenario, you cannot square that with the clear language of not just the form, but the instructions the court gives on the back of the form, the court's manual that it prescribes and issues on its website, and the court cost schedule itself. And as Your Honor, Judge Harris pointed out, this is not, and I am paraphrasing. I'm not attributing this specifically to you, Your Honor. But this is not an argument about the bonafide-era defense. This is an argument that we have twisted and perverted the FPCPA into a game of gotcha against lawyers that represent associations or engage in other means of debt collection that follow the court forms, follow the court's manuals, follow the court's cost schedule, and in this case, follow the rules, and now are subject to class-action litigation in this gotcha game. And that's not what the FPCPA was intended to address or to protect against. With regard to the statement of lien and the MCDCA issue, or MCLA, sorry, issue, and before I move to that, I don't know if there are any issues with regard to materiality. I think it is very clear that the Fourth Circuit has not only adopted materiality in the Powell case but in several cases subsequent to that. I don't think at this point that's an issue, given counsel's argument, but it is a clear issue here. And I would note Judge Hazel, when he calculated the fact that this was de minimis, whether you looked at the total of the amount owed or the total of the amount, including interest and attorney's fees, it was either 0.18% or 0.13%. Quite frankly, there is no dispute that the 10 of the dollars from that $35 was specifically included in the form. So what we're really talking about is $25, so it's even more de minimis. But you don't, if I understand the structure of your argument, if you are right about the first nine things you said, we don't even get to this question of materiality and de minimis. That is correct, yeah. Okay. Absolutely. Now, with regard to the statement of the lien, counsel argues that this future sums provision, as they have called it, is not permissible because they claim you can't file the lien without a breach. As the statement of a lien states, as the Maryland contract lien act states, and as the governing documents in each of the two associations presented in our argument and the joint record extract specifically states, those amounts are not secure unless they are unpaid and there is a breach. They are not encompassing unpaid anticipatory claims. They are only securing those amounts who have been unpaid at the time they are secure, and therefore there is a breach. And it is not an anticipatory breach of contract, which is why it falls within the definition of damages under the Maryland contract lien act. The argument that the Maryland contract lien act specifically includes interest because it's somehow easy to calculate is pure speculation and is nowhere in any of the materials submitted. What is evident is that the Maryland contract lien act provides that whether or not the underlying contract allows for interest, the statute is going to allow for it. But we don't even have to get there here because, as Your Honor, Judge Motz pointed out, the governing documents in this case, in both cases, specifically allow for additional costs incurred. I will grant you the Gabriel run governing documents, which is a bit more modern, specifically uses the language continuing lien. But additional amounts that come due is acknowledged in both. Appellant's argument is... Is the Holly Hill language somewhere? The Holly Hill language is in the joint record extract and it is identified. Do you know the JA reference? JA 181 and 138. Okay. Thank you. Go ahead. Appellant's position is that under the case law and select portfolio specifically, it doesn't matter what the contract says. It absolutely matters what the contract says because the Maryland contract lien act says you can only file a lien if you have a contract that allows for it. So you have to look at the contract. The only thing select portfolio stood for was that the declarations in and of themselves, once recorded, don't create a lien. There is no suggestion here that Nagel and Zeller, on behalf of their clients, asserted a lien based solely on the governing documents. There is no dispute that notice was provided to both Ms. Archie and to Dr. Sharma. There is no dispute that neither of them filed objections pursuant to the Maryland contract lien act. And that then a lien was recorded, the statement of lien was recorded. So this is not a situation that comes anywhere close to select portfolio. No one has asserted that there is some automatic lien. Rather, they have asserted a lien that is secured once those amounts come due. And I would note that one of the issues that Judge Hazel in the underlying case was very troubled by was this suggestion that under appellant's interpretation of the rules, that it would have required an association to record a new lien at the cost of the owner, that they would have to record a new lien every time an additional amount is incurred or every time the owner made a partial payment and the amount was reduced. But I thought your colleague on the other side said that, in fact, one of the associations does that anyway. That is incorrect, Your Honor. And what is clear... I mean, did I misunderstand what he said? No, you did not misunderstand what he said. What he said was erroneous. I'm so gaga this morning. Your Honor, if you look at what he's referring to, is that JA 112 and then JA 115. What Nagel and Zeller has done on behalf of its clients pursuant to the Maryland Contract Lien Act is filed two liens. One on which its clients, if it needed to, could foreclose upon because the Maryland Contract Lien Act is very specific as to what amounts an association can move to foreclosure on. And the second, which is broader and encompasses those amounts that you cannot foreclose upon but you can still secure. So these are not two liens filed at different times to reference increases in payments or decreases in costs or vice versa. They are done pursuant to the contract lien act so as to protect their client's interest should they foreclose or not. Let me ask you about that. The foreclosure statute is 204, is that right? Yes, Your Honor. And in, I guess, the... I don't know where I am. D2, you know, under that it's talking about what the amounts that could be foreclosed include. And it says delinquent periodic assessments or special assessments in any interest. Is that phraseology, is the timing for when it's delinquent at the time the lien is filed or at the time the foreclosure happens? Those amounts, Your Honor, I believe would be at the time the lien is filed. Okay, all right. Because that's the point. So you contend that you couldn't foreclose on amounts that haven't been, that weren't delinquent at the time of the lien being filed. You're just securing those, is that right? Well, it's a little bit different than that, Your Honor. The Maryland Contract Lien Act says that you cannot foreclose on fines and attorney's fees and interest relating to those fines. Right. So you can secure those amounts, but you can't foreclose on those amounts. Yeah, I'm really talking about delinquencies that become due after the lien that might be encompassed by the continuing lien language. I believe, and maybe I misunderstood your question a minute ago, Your Honor, I believe you can foreclose on those amounts, but the lien when it is filed identifies the amounts that are delinquent at that time, additional amounts come due, and then the foreclosure process begins, and the appropriate complaints and so forth are filed so that the trustee and the court auditors can determine the total amount due. Right. And from which there may be a deficiency judgment and so forth. Okay. Did I answer your question? I think so. The problem with appellant's interpretation is that it would require a new lien, which is not what has occurred here, and which is not what Nagel and Zeller has done or would do because you're driving costs up. If you did it, you would probably get sued for doing it under the FGCP. Yes. And when Judge Hazel pointed that interpretation out to appellant's counsel during the argument, and this is in the transcript, which is part of the Joint Record Extract, their response was that that is correct. That is precisely their interpretation, and that if that is correct, it may well be that the Maryland Contract Lien Act is, quote, flawed. This court under prevailing case law is not to interpret statutes in a way that leaves them flawed, bizarre, or idiosyncratic. It does not make sense to require an association or its counsel to file a new lien, and there was no answer given at the hearing on a daily basis, on a weekly basis, a monthly basis. It would be nonsensical. It would flood the land records offices and would drive up the very costs that appellants are seeking to protect. Finally, before my time runs out, there was an argument made in appellant's brief that the court erred in not remanding the remaining state law claims. It was not addressed this morning, but I want to just address it briefly. I believe that the case law is crystal clear, both from the Supreme Court, from this court, and quite frankly, the U.S. Code, that in fact the district court had the discretion to either dismiss the remaining state law claims without prejudice or to remand them because we are not in a situation where the court did not have subject matter jurisdiction, which is the statute appellants were relying upon, but rather we were talking about supplemental or pendent jurisdiction. And so the court in its discretion was proper in dismissing the claim without prejudice, particularly given that in this case, Ms. Archie's claims were as the lien barred by limitations. There is no claim for declaratory judgment available under the statutes that have been cited. The disparagement of title claim was also barred by limitation, and therefore dismissal without prejudice was well within the court's discretion, and that aspect of it has not been challenged. On this issue, did the plaintiffs have any time after the dismissal to file in state court? Absolutely. And it's been... And I say absolutely. Absolutely as to some claims. The disparagement of title claim, we have argued, and I think properly, also under Maryland law, had a one-year statute limitation. So as to Ms. Archie's lien was already barred by limitation, so I don't want to suggest that that was not. The Maryland Contract Lien Act is governed by a three-year statute of limitations. I'd have to go back and look. But certainly it was dismissed without prejudice, which means they could have. And we are now 14 months, approximately, from when those claims were dismissed by the district court. And to my knowledge, there has been nothing filed in state court to attempt to preserve those claims. If there's nothing further, thank you, Erin. Thank you. I realize I went over last time, so I'll try not to use all the five minutes, but to answer Judge Baldwin's question on that, and I'm sorry if I'm not pronouncing that right. Foreclosure process would generally allow, not under the Contract Lien Act, but under the foreclosure rules, a creditor who bid in. And in this case, we know a negative-dollars client purchased Ms. Archie's property at a foreclosure sale. And typically when they bid in and the creditor purchases it, they bid in at what's owed. And so that's in the complaint at $17,000 or so, I think is what they bid in. And then in the next part of the process, if there's any more money is owed in a typical foreclosure, it's a mortgage company, they would say more money is owed, they would do an amended affidavit of debt, or they could otherwise make a claim for the surplus. So there is a mechanism in the foreclosure process outside of the Contract Lien Act for them to get paid for any excess sums that come due. In this context, they're foreclosing on a statement of lien. And just to be clear, there are in the record two liens that are subject to the claims that are before the court, but those weren't the liens that were foreclosed on. The lien that was foreclosed on was a prior lien against Ms. Archie. So my representation to the court earlier, we know from this case that there are multiple liens. Just as to Ms. Archie, we don't really understand why they had that future language in there, but that was the basis of my representation to the court. On the cost issue, 3603, counsel cited to that rule. That rule talks about costs awarded by the court and otherwise limited by law. We cite the Commercial Law Article 15605 that authorizes creditors or judgment creditors to get costs assessed in the case, in the cost. So we've cited to that in our brief, and our argument as to the cost is they weren't entitled under the case law to increase the cost, whether it's $25 or $35, however the court looks at it, because those sums aren't owed. And then we cite to the SunTrust case that says, and it is a merger case, because remember, that was a contract claim they sued Ms. Archie on. They sued under a contract, she owes a certain sum, they got a judgment, and under Maryland law, that contract claim merged. Now, they had new contract claims later, they were subject to the liens, but they're not entitled to that. So, honestly, and respectfully, we believe that the costs here are at issue. The materiality does apply to sums not owed. And we cited a bunch of those cases in our reply brief, in the opening brief, and this court has been specific. This is not an idiosyncratic claim in that we're suggesting that putting the attorney fees in the addendum clause that aren't yet awarded is a volatile of the FDCPA. This is asserting sums that are not legally owed, or using means or methods that are not legally permitted under the law are volatile of the FDCPA. It is not suggesting that an addendum clause that asks for attorney fees that will be awarded or not by a court later is somehow volatile of the FDCPA. And so, we just respectfully disagree with counsel. On the remand issue, this came up in the prior case, and I'm not here to argue their case, but we're left with a conundrum here. And we think 1447C is clear. Once the court disposed of the federal claims, it should have remanded the rest of the claims where this case started back to state court. And the problem we have, like, maybe, I don't know the facts of the prior cases, law, the case back from a collateral stop, under the situation that we have is, the district court judge here ruled on the merits of the legal issues that underpin the state law claims. And so, if the counsel on the other side is going to argue on if we filed a new action, we're collaterally stopped because we litigated that to a final order here. And we know we have a final order here because it said claims were dismissed with and without prejudice. And I'm 99% sure, under the local rules, when it says, even if it's silent, it's without prejudice. But that, for collateral stop purposes, it doesn't matter if it's with or without purposes. So we're in a conundrum where we had to appeal in this case to address these issues because we couldn't really raise the underlying MCLA claims and the garnishment claims because of the way the district court judge ruled here. He could have ruled that the FDCPA doesn't apply and not gotten to the merits of those claims and then remanded and I wouldn't have been in this position. And the law, the case doctrine, the Court of Appeals had a decision a few years ago, I only have the date of it, August 25, 2016, Baltimore County versus FOP, Baltimore County Lodge 4. And the Court of Appeals, and I think the federal court would follow all the case doctrine for state law, but it's one of those things I'm not exactly sure about, so it's a candid report. Usually the federal court borrows certain doctrines from state court. Law of the case doctrine in Maryland is anything that could have been raised and would have been raised is subject to law of the case. And so if we're on remand because the district court ruled on these underlying state law issues, we're still in a little bit of a pickle. Because it's still law of the case. I only want to take five seconds of your time, but the district court ruled on the underlying claims under the State Debt Collection Practices Act? He ruled on the underpinnings for the MCCCA claims. He held that these practices were permitted under state law. Right. So his ruling was basically these practices are permitted, so even though I'm dismissing the state law claims for which we're disputing the practices, his ruling is sort of, I don't know if it's officially law of the case under any circumstances, but it puts me in a weird situation at least with collateral estoppel because he dismissed it as a final ruling. I appreciate that issue. I understand what you're saying, but you could have appealed that like you're doing and still filed in state court and the outcome of the appeal, if you are successful, would have allowed you to then bring the state law claims, right? Right. I appealed to preserve the issue to not create a conundrum in state court. I have not proceeded yet in state court. And my colleague, she's very sharp. I would raise collateral estoppel if I were on the other side. And so not to tax the state court, we're here on appeal sort of dealing with these issues. We think that the court erred in applying the Maryland Contract Lien Act claim to allowing future claims. We think the district court erred in permitting and finding that a garnishment may seek sums that were never awarded in the cause. And the FDCPA dismissal should be dismissed. And we also believe if the court disagrees with us on that, we ask that the court reverse the lower court and find that the case should be remanded to state court as opposed to dismissal. So at least I'm not having to deal with collateral estoppel issues. I don't know honestly what I'll have to do with the case and how that will apply, but I do think I have a collateral estoppel problem and the case should have been remanded under 1447C since the court held there was no more federal jurisdiction. Unless the court has any other questions, I appreciate you letting me go over. We will ask our clerk to adjourn court and then we'll come down and greet the lawyers. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Diana Gribbon Motz, Pamela A. Harris, A. Marvin Quattlebaum Jr.